[Cite as *State v. Aguilar*, 2011-Ohio-6008.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

MELVIN AGUILAR

    Appellant

C.A. No.    10CA0051

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    10-CR-0264

DECISION AND JOURNAL ENTRY

Dated: November 21, 2011

MOORE, Judge.

{¶1}    Appellant, Melvin Aguilar, appeals the decision of the Wayne County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On June 22, 2010, the Wayne County Grand Jury indicted Melvin Aguilar on two counts of felonious assault in violation of R.C. 2903.11(A), each a felony of the second degree, with accompanying firearm specifications.  On September 17, 2010, Aguilar entered a change of plea and pleaded guilty to one count of felonious assault with an accompanying firearm specification.  The second count and firearm specification were dismissed pursuant to the plea agreement, and the State agreed not to oppose his request for the minimum sentence allowed by law.  A presentence investigation and victim impact statement were completed.  The presentence investigation acknowledged that Aguilar had felony charges pending in Cuyahoga County.  On October 19, 2010, the trial court sentenced Aguilar to five years of incarceration on the felonious

assault count and to three years of incarceration on the firearm specification. It further ordered that the sentences be served consecutively for a total of eight years of incarceration.

{¶3} Aguilar timely filed a notice of appeal. He raises three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN IMPOSING A SENTENCE OF EIGHT YEARS (FIVE YEARS FOR FELONIOUS ASSAULT, PLUS A THREE YEAR GUN SPECIFICATION) WHEN IT CONSIDERED AN IMPERMISSIBLE FACTOR, THE NATURE OF AN UNADJUDICATED CHARGE IN ANOTHER COUNTY."

{¶4} In his first assignment of error, Aguilar argues that the trial court erred in imposing an eight-year sentence of incarceration because it considered a charge pending in another county. Specifically, he argues that the trial court violated his rights under the Sixth Amendment to the United States Constitution.

{¶5} With respect to Aguilar's contentions that his constitutional rights were violated, he failed to preserve any objection on these issues at the trial court. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. Therefore, he forfeited these issues. Further, we do not reach the merits of his contentions because he did not argue plain error to this Court. While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶11.

**{¶6}** Accordingly, we decline to address his first assignment of error.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN ACCEPTING A GUILTY PLEA WHEN [AGUILAR] ASKED A QUESTION ABOUT JUDICIAL RELEASE WHICH WAS NOT ANSWERED AT THE PLEA HEARING."

**{¶7}** In his second assignment of error, Aguilar argues that the trial court erred in accepting his guilty plea because it had not answered his question about judicial release. We do not agree.

**{¶8}** A defendant may seek to vacate his guilty plea either by filing a motion to withdraw the plea in the trial court or upon direct appeal. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, paragraph one of the syllabus. A criminal plea must be entered knowingly, voluntarily, and intelligently. Id. at ¶7. If it is not, enforcement of the plea is unconstitutional. Id., quoting *State v. Engle* (1996), 74 Ohio St.3d 525. In evaluating whether a right was violated, strict compliance with Crim.R. 11 is preferred, but not required, provided that the court substantially complied with the rule. *State v. Nero* (1990), 56 Ohio St.3d 106, 108. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id. Furthermore, an error involving a nonconstitutional right "will not invalidate a plea unless the defendant thereby suffered prejudice." *Sarkozy* at ¶20, quoting *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, at ¶12. This requires a showing that, but for the error, the plea would not have been made. Id. This Court, ordinarily, must review the totality of the circumstances surrounding the guilty pleas to determine whether the defendant subjectively understood the effect of his pleas. Id.

**{¶9}** Aguilar argues that his plea was not entered knowingly because the trial court failed to answer a question he had asked. The trial court inquired about the change of plea form

and asked Aguilar if he was able to read and understand the form. Through an interpreter, he answered in the affirmative. The court also asked if he had any questions about the form he had signed. He stated, "It talks about judicial release in there. My question is would [I] be able to take that chance?" The court asked, "Release, did you say release?" Aguilar's trial counsel clarified that the form has "a section on post release control" and that he had told Aguilar that he was "more likely than not going to be deported because he's a non citizen. However, if for some reason he [were] allowed to remain in the U.S. he [would] be subject to post release control[.]" The court clarified that this decision would be made by parole authority. The court asked, "Does that answer his question?" Aguilar responded, "I have one more question." He then asked if he would be able to apply for a "TPS permit" while incarcerated, and he was told that it was an immigration matter.

{¶10} Aguilar was then asked if he understood the charges, and he responded that he did. The trial court asked him if he understood that the "sentence for felonious assault is two, three, four, five, six, seven or eight years" and he responded that his lawyer had explained that to him, and that he understood that the court could impose any one of those sentences. In addition, he was subject to a mandatory three year sentence because of the weapon specification. Aguilar replied, "I do understand the minimum sentence." The court further clarified that the minimum sentence it could impose was five years, and the maximum was eleven years. When asked if he had any questions about that, he responded that he did not.

{¶11} The court also informed Aguilar that he would be subject to a mandatory three-year period of postrelease control. He again responded that he understood. The court clarified that because he was not a citizen of the United States, federal authorities may decide to deport him, in which case he would not be subject to postrelease control. In addition, the conviction for

which he was pleading guilty could have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. When asked if he had any questions about that, he responded that he did not. At this point, Aguilar again raised a question regarding deportation and whether or not the trial court could do anything to delay it. He was told that it was a federal law issue. The trial court went on to inform Aguilar that "by pleading guilty today you give up certain Constitutional Rights." This includes the right to have a jury trial, the requirement that the State prove guilt beyond a reasonable doubt, the right to confront witnesses, the right to have compulsory process for obtaining witnesses in his favor, and the right not to testify against himself. He was asked about each of these rights individually, and he responded to each that he understood. Aguilar affirmed that he had not been promised anything in exchange for his plea, and that no one was forcing him to plead guilty. Finally, the court said: "[H]aving been advised of your rights, having been advised of the penalty you face, having been advised of post release control, and about the possibility of deportation, do you still wish to plead guilty?" Aguilar responded that he did.

{¶12} The record suggests that the trial court and counsel understood Aguilar's question to relate to postrelease control, as opposed to judicial release, and the court answered the question regarding postrelease control. When the court finished its explanation, Aguilar did not follow up with a question redirecting the court to the subject of judicial release. Rather, he went on to a question with a completely different subject matter. That would have suggested to the court and to his attorney that he was satisfied with the answer previously given by the court. More importantly, Aguilar "is incorrect that a trial court must discuss judicial release as part of a plea agreement. '[T]he trial court need not inform a defendant about his eligibility for judicial release unless it is incorporated into a plea bargain.' *State v. Simmons*, 1st Dist. No. C-050817,

2006-Ohio-5760, ¶13, citing *State v. Mitchell*, 11th Dist. No. 2004-T-0139, 2006-Ohio-618, and *State v. Cline*, 10th Dist. No. 05AP-869, 2006-Ohio-4782." *State v. Gibson*, 7th Dist. No. 07 MA 98, 2008-Ohio-4518, at ¶9. The record does not indicate that judicial release was a part of Aguilar's plea agreement. Thus, the court did not err in failing to discuss judicial release before accepting his plea.

{¶13} Given the totality of the circumstances, particularly the fact that the trial court complied with Crim.R. 11 and R.C. 2943.031, and was not required to discuss judicial release, Aguilar has not demonstrated that "but for the error" in the trial court not addressing judicial release, he would not have entered the guilty plea. *Sarkozy* at ¶20. Notably, he makes no argument that he would not have otherwise entered the guilty plea. Accordingly, Aguilar's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"IN NOT OBJECTING TO THE TRIAL COURT'S ERROR IN SETTING FORTH IMPERMISSIBLE GROUNDS FOR ITS SENTENCE, AND IN FAILING TO RESPOND TO A QUESTION RAISED BY [AGUILAR] AT THE PLEA HEARING, TRIAL COUNSEL WAS INEFFECTIVE."

{¶14} In order to show ineffective assistance of counsel, Appellant must satisfy a two-prong test. *Strickland v. Washington* (1984), 466 U.S. 668, 669. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. *Bradley*, 42 Ohio St.3d at 141-142, quoting *Lytle*, 48 Ohio St.2d at 396-397, vacated in part on other grounds. "Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel." *State v. Velez*, 9th Dist. No. 06CA008997, 2007-Ohio-5122, at

¶37, citing *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. This Court need not address both *Strickland* prongs if Appellant fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶10. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *State v. Colon*, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶48, quoting *Strickland*, 446 U.S. at 687.

{¶15} Initially we note that Aguilar has not explained how he was prejudiced by the alleged errors. See *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, at ¶62, citing *Strickland*, 466 U.S. at 687-88. To demonstrate prejudice, Aguilar "must demonstrate that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *State v. Evans*, 9th Dist. No. 09CA0049-M, 2010-Ohio-3545, at ¶4. Aguilar makes no such argument and, therefore, fails to meet the second prong of the *Strickland* test. "If an argument exists that can support [Aguilar's contentions], it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. Nos. 18349, at *8. Furthermore, Aguilar has failed to demonstrate that his trial counsel's performance was deficient.

{¶16} Aguilar argues that trial counsel was deficient because he failed to object to the trial court's reliance on the fact that he had pending charges in another county when it sentenced him. He fails to identify any law in support of his conclusion. The trial court's consideration of this fact was appropriate because it was contained in the presentence investigation report made pursuant to R.C. 2951.03. Additionally, under R.C. 2929.12(D)(1), the trial court was required to consider whether Aguilar was awaiting trial on other charges at the time of committing the offense. As such, his trial counsel was not deficient for failing to object to information properly before the court for consideration.

{¶17} Aguilar further argues that his trial counsel was deficient because he did not object to the trial court's failure to answer Aguilar's question about judicial release. Again, he fails to identify any law in support of his conclusion. As discussed above, the plea agreement form discussed only postrelease control. In the context of Aguilar's question, it appears that he was actually inquiring about postrelease control. After the trial court answered his question in the context of postrelease control, it asked Aguilar if that answered his question. Aguilar continued to ask a separate question. After answering the second question, the trial court afforded Aguilar the opportunity to ask additional questions. He did not do so. Aguilar has failed to demonstrate that his counsel's performance was deficient for failing to object to the trial court's answer regarding post-release control rather than judicial release.

{¶18} Aguilar's third assignment of error is overruled.

III.

{¶19} Aguilar's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CONCURS

DICKINSON, J.
CONCURS, SAYING:

{¶20} I concur in the majority's judgment and most of its opinion. I would, however, reach the merits of Mr. Aguilar's first assignment of error and conclude that the trial court did not commit plain error by considering the charge pending against him in Cuyahoga County.

APPEARANCES:

GEORGE W. MACDONALD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.