[Cite as *State v. Roper*, 2019-Ohio-775.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28965 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| DARRNELL ROPER | CASE No. CR 2010-12-3374 (A) CR 2011-11-3219 (A) CR-2012-07-2095 |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: March 6, 2019

TEODOSIO, Presiding Judge.

{¶1} Appellant, Darrnell Roper, appeals from an order denying his motion to vacate his guilty pleas in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In August of 2012, Mr. Roper had three pending criminal cases before Judge Elinore Marsh Stormer. He resolved all three cases simultaneously in the trial court by pleading guilty to: (1) a charge of intimidation in CR 2012-07-2095; (2) charges of aggravated burglary with firearm and criminal gang activity specifications, aggravated robbery with firearm and criminal gang activity specifications, and participating in a criminal gang in CR 2011-11-3219(A); and (3) a community control violation in CR 2010-12-3374(A), in which the underlying conviction was trafficking in marijuana. The trial court accepted his guilty pleas, found him guilty, and sentenced him to a total aggregate prison term of 9 years and 11 months,

which included a 4-year mandatory term. After his sentence was imposed, a discussion occurred on the record as to when Mr. Roper would be eligible to file for judicial release, and he was misinformed that he would be eligible to file after serving 4 years of his prison sentence. Mr. Roper's sentencing entries also incorrectly stated: "The Defendant will be eligible for judicial release after serving Four (4) years."

{¶3} On appeal by the State, this Court reversed and remanded the matter for resentencing in case CR 2011-11-3219(A) because the trial court incorrectly sentenced Mr. Roper on two specifications even though the underlying offense for those specifications had been merged with another allied offense for purposes of sentencing. *State v. Roper*, 9th Dist. Summit Nos. 26631 and 26632, 2013-Ohio-2176, ¶ 11-12. Upon remand, the trial court, now presided over by Judge Jane Davis, resentenced Mr. Roper in accordance with our decision. The re-sentencing entry again incorrectly stated: "The Defendant may *apply* for judicial release after serving the mandatory Four (4) year sentence imposed in this case." (Emphasis sic.)

{¶4} In March of 2016, Mr. Roper filed a motion for judicial release, which was denied by the trial court, now presided over by Judge Todd McKenney, after a phase one hearing. In November of 2016, Mr. Roper filed a motion to vacate his guilty pleas, claiming (1) the court informed him he could file for judicial release after 4 years, (2) he would not have pled guilty if he was not eligible for judicial release after 4 years, (3) it was his understanding that judicial release would be granted after 4 years, and (4) a manifest injustice occurred when he relied on a promise of judicial release after 4 years despite the fact that he would be ineligible to file for judicial release at that time. After a hearing, the trial court, now presided over by Judge Alison Breaux, denied the motion and this appeal followed.

{¶5}   Mr. Roper now appeals from the order denying his motion to vacate his guilty pleas and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO VACATE HIS PLEA

{¶6}   In his sole assignment of error, Mr. Roper argues that the trial court erred in denying his motion to vacate his guilty plea because he was induced to plead guilty based on the court's unfulfilled or unfulfillable promise that he could file for judicial release after serving only 4 years of his sentence.  We disagree.

{¶7}   Pursuant to Crim.R. 11(C)(2)(a), a trial court shall not accept a guilty plea to a felony offense unless it "[d]etermin[es] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."  Judicial release eligibility "is not one of the items in Crim.R. 11(C)(2)(a) that the trial court is required to determine a defendant's understanding of when he or she enters a guilty plea."  *State v. Foster*, 1st Dist. Hamilton No. C-170245, 2018-Ohio-4006, ¶ 24.  Thus, a trial court need not inform a defendant about his eligibility for judicial release unless it is incorporated into a plea bargain.  *State v. Aguilar*, 9th Dist. Wayne No. 10CA0051, 2011-Ohio-6008, ¶ 12.  If the court chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, however, the information conveyed must be accurate.  *State v. Clarke*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 39.

{¶8}   "'One who enters a guilty plea has no right to withdraw it.'"  *State v. Brown*, 9th Dist. Summit No. 24831, 2010-Ohio-2328, ¶ 8, quoting *State v. Xie*, 62 Ohio St.3d 521, 526

(1992). Nevertheless, Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The defendant bears the burden of demonstrating the existence of a "manifest injustice," which has been defined as a "'clear or openly unjust act.'" *Brown* at ¶ 9, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998). "'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Ruby*, 9th Dist. Summit No. 23219, 2007-Ohio-244, ¶ 11, quoting *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. "Under the manifest injustice standard, a post-sentence 'withdrawal motion is allowable only in extraordinary cases.'" *Brown* at ¶ 9, quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977).

{¶9} "Accordingly, 'the decision whether to grant a motion to withdraw a guilty plea rests within the sound discretion of the trial court,' and this Court 'will not reverse a trial court's denial of a motion to withdraw a plea absent an abuse of discretion.'" *State v. Milano*, 9th Dist. Summit No. 28674, 2018-Ohio-1367, ¶ 6, quoting *State v. Pippert*, 9th Dist. Lorain No. 14CA010698, 2016-Ohio-1352, ¶ 16. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} A plea hearing was held on August 20, 2012, to resolve Mr. Roper's three cases, in which the prosecutor advised the court as to the Crim.R. 11 plea negotiations, specifically that

Mr. Roper would be pleading guilty with no agreement between the parties as to what sentence he would receive. The prosecutor stated that he understood the court intended to impose a sentence of 9 years and 11 months, but he was nonetheless requesting a longer sentence. The prosecutor made no mention of any agreement as to the filing for or granting of judicial release. Immediately following the prosecutor's representation of the plea negotiations to the court, defense counsel stated, "What the [p]rosecutor has told you is correct[,]" and made no mention of any agreement as to the filing for or granting of judicial release. After a lengthy discussion regarding the firearm specifications, the court asked defense counsel if there was "[a]nything additional * * *?" Counsel replied, "No, Judge. I think you understand all the facts and circumstances of the case. And I'd ask the Court to impose a sentence that you've indicated you are thinking about."

{¶11} The court accepted Mr. Roper's guilty pleas in CR 2012-07-2095 and CR 2011-11-3219(A) as knowingly, intelligently, and voluntarily made, found him guilty, and asked him if there was anything he wished to say before sentence was imposed. Mr. Roper replied, "No[,]" and made no mention of any agreement regarding the filing for or granting of judicial release.

{¶12} The court then addressed the community control violation in CR 2010-12-3374(A), accepted Mr. Roper's guilty plea as knowingly, intelligently, and voluntarily made, and found him guilty of the community control violation. After a brief sidebar that was not made part of the record, the court asked the attorneys if they had anything to add, but again neither one mentioned the filing for or granting of judicial release.

{¶13} Although Mr. Roper faced a potential maximum sentence of over 40 years in prison for these three cases, the court sentenced him to an aggregate total of 9 years and 11

months in prison. After the court imposed its sentence on all three cases, the following exchange occurred between the court and Mr. Roper on the record:

THE COURT: Do you know why I have chosen the nine years and eleven months?

THE DEFENDANT: So I didn't have to do ten? I was eligible for judicial?

THE COURT: What does that mean to you?

THE DEFENDANT: I need to go down and do what I've got to do. Change my life and come home.

THE COURT: And show the world that you can be a different person. That is, frankly, a gift to you.

But it also recognizes that no matter what your sentence is, you're going to get out. And my preference would be that you get out in a way that is very controlled so that you can make a decision about changing your life that you need to make. Because one day, you will be back with us, regardless.

{¶14} After further conversations, the following exchange occurred between the court and the attorneys on the record:

THE COURT: Okay. You would be eligible, potentially, for judicial release after you complete five years and six months, I believe is what we decided.

MR. WHITNEY: I believe it may be four.

THE COURT: But my understanding is that the minimum would be five.

MR. WHITNEY: I think it may be four.

THE COURT: No. He has to do five before he's eligible. If he served - -

MR. HOWELL: It's four now.

THE COURT: Is it four?

MR. HOWELL: It's four.

THE COURT: Okay.

MR. HOWELL: He's eligible.

And I also just want to put on the record the State is going to oppose any judicial release for Mr. Roper.

After further discussions as to the ramifications of his crimes, Mr. Roper remarked, "I probably won't even get the judicial." The trial court's sentencing entries also state that Mr. Roper would be eligible to file for judicial release after serving 4 years of his prison sentence.

{¶15} On appeal, the parties do not dispute that Mr. Roper is, in fact, not eligible to file for judicial release after serving only 4 years of his prison sentence. The trial court recognized this as well in its order denying Mr. Roper's motion to withdraw his guilty plea by stating, "This [c]ourt acknowledges its prior Journal Entries are incorrect and contrary to law with regard to the Defendant's eligibility to apply for judicial release." At the time of his plea and sentencing hearing, Former R.C. 2929.20(C)(4) permitted eligible offenders in Mr. Roper's situation to file a motion for judicial release under the following guidelines:

> If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender may file the motion not earlier than five years after the eligible offender is delivered to a state correctional institution or, *if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms*.

(Emphasis added.) Mr. Roper's 9-year and 11-month sentence included a 4-year mandatory term, thus enabling him under Ohio law to file for judicial release only after serving 9 years of his total aggregate prison term.

{¶16} Mr. Roper argues that the trial court's misstatement of the law regarding judicial release induced him to plead guilty, and because this promise of eligibility to file for judicial release after 4 years was unfulfilled or unfulfillable, a manifest injustice has occurred.

{¶17} "A plea is invalid where it has not been entered in a knowing, intelligent, and voluntary manner." *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 4. Moreover, "[a] guilty plea induced by 'unfulfilled or unfulfillable promises,' made by either

the prosecution, the court, or defendant's counsel is not voluntary." *State v. Hawk*, 81 Ohio App.3d 296, 299 (9th Dist.1992), quoting *Brady v. United States*, 397 U.S. 742, 755 (1970).

{¶18} Although the record includes discussions in open court as to when Mr. Roper would be eligible to file for judicial release—and the attorneys and court incorrectly determined that Mr. Roper would be eligible after only serving 4 years—those discussions occurred *after* the court had already conducted its Crim.R. 11 plea colloquy with Mr. Roper, accepted his guilty pleas, found him guilty, and imposed its sentence. The record does not include any discussions regarding judicial release on the record *prior to* the trial court's acceptance of Mr. Roper's guilty pleas and imposition of his sentence. Furthermore, Mr. Roper signed written pleas of guilty in cases CR 2012-07-2095 and CR 2011-11-3219(A), both of which include the following statement:

> I have been fully advised by my attorney of the Criminal Rule 11(F) plea negotiations which have also been stated in open court and I accept those negotiations as my own. I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. I am not under the influence of drugs or alcohol. No threats have been made to me. *No promises have been made except as part of this plea agreement stated entirely as follows*:

(Emphasis added.) The above paragraph is immediately followed by three blank lines, an area provided for the parties to indicate any essential terms of the plea agreement in writing. That entire area in both of Mr. Roper's written pleas of guilty remains blank, making no reference to any agreement permitting Mr. Roper to file for judicial release after serving 4 years or any other noteworthy terms of the negotiated plea agreement.

{¶19} Mr. Roper attached his own signed affidavit to the motion to vacate his guilty pleas, in which he avers: (1) the trial court promised he would be eligible for judicial release after 4 years; (2) he pled guilty based on that representation by the court; (3) he would not have

pled guilty if he was not eligible for judicial release after 4 years; and (4) he understood that he was going to receive judicial release after 4 years. We note that, "[g]enerally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice." *State v. Croskey*, 5th Dist. Richland No. 2017 CA 0102, 2018-Ohio-2078, ¶ 17. At the evidentiary hearing on August 22, 2017, Mr. Roper's trial counsel testified that he discussed judicial release with both the prosecutor and trial court "in chambers" and then again privately with Mr. Roper prior to his plea. Counsel believed that Mr. Roper's eligibility for judicial release was a factor in his decision to plead guilty. Counsel conceded that there was no promise judicial release would be granted, but he testified that the court indicated there "could be substantial consideration" for judicial release. Mr. Roper also testified at the hearing that he decided to enter a guilty plea once his attorney told him he could receive judicial release. He further testified that the trial court's promise of judicial release induced him to plead guilty and that he would not have pled guilty without that promise of judicial release.

{¶20} Contrary to appellate counsel's assertion during oral arguments, the trial court, in its order denying Mr. Roper's motion to vacate his pleas, did not find that a manifest injustice had occurred. Instead, the trial court determined that Mr. Roper failed to show his plea was actually induced by any misinformation relayed to him at his plea and sentencing hearing. Although defense counsel testified that the topic of judicial release was discussed in chambers between the court and attorneys, and later between defense counsel and Mr. Roper, the trial court concluded that no actual agreement that Mr. Roper could file for judicial release after serving 4 years could be found anywhere in the record. During the extensive plea colloquy, neither Mr. Roper nor his attorney indicated any promises were made regarding the filing for or granting of judicial release. The trial court further noted that, on the record, the court and attorneys

expressed a difference of opinion as to when Mr. Roper would be eligible to file for judicial release, which would have been "unnecessary and illogical" had there been an agreement. The court ultimately concluded that Mr. Roper was not induced to enter his pleas of guilty by any promises related to judicial release.

{¶21} After a review of the entire record, we cannot conclude that the trial court's decision was unreasonable, arbitrary, or unconscionable. Mr. Roper's affidavit and the testimony presented at the evidentiary hearing do not establish that a manifest injustice occurred, but instead simply conflict with the evidence gleaned from the two written pleas of guilty and transcript of the plea and sentencing hearing. No discussion occurred on the record regarding the filing for or granting of judicial release prior to Mr. Roper entering his guilty pleas and being sentenced. Mr. Roper signed two written pleas of guilty explicitly stating that no promises were made to him as a part of his plea agreement, and the area reserved for the parties to note any specific terms of the plea agreement is conspicuously blank in both documents. Although he faced over 40 years in prison, Mr. Roper was aware that the court intended to only sentence him to 9 years and 11 months in prison if he pled guilty in these three cases, despite the State's recommendation for a longer sentence. During the post-sentence discussion regarding judicial release, Mr. Roper stated that he "probably won't even get [judicial release,]" strongly indicating that any ability to file for judicial release after a certain number of years did not induce him to plead guilty. Therefore, we find no merit in Mr. Roper's argument that the misinformation provided by the trial court as to the filing or granting of judicial release somehow *induced* him to plead guilty, as those statements were only made *after* he pled guilty and was sentenced. *See State v. Stewart*, 4th Dist. Lawrence No. 09CA33, 2011-Ohio-181, ¶ 8, fn. 2 (determining that a

trial court's misstatement regarding judicial release eligibility does not induce a guilty plea when it occurs during sentencing, after a guilty plea was entered).

{¶22} We conclude that Mr. Roper has failed to meet his burden of demonstrating that a manifest injustice has occurred. The trial court's conclusion that Mr. Roper was not induced to plead guilty by any judicial release promises is supported by competent and credible evidence within the record. We therefore conclude that the trial court did not err or abuse its discretion in denying Mr. Roper's motion to vacate his guilty pleas.

{¶23} Accordingly, Mr. Roper's sole assignment of error is overruled.

III.

{¶24} Mr. Roper's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
DISSENTING.

{¶25} I respectfully dissent. There is no dispute that the trial court misinformed Roper at the sentencing hearing that he would be eligible for judicial release after serving four years of his sentence. It is further undisputed that his sentencing entries contained inaccuracies regarding his eligibility for judicial release. Relying on those statements, Roper would not have contested that issue on direct appeal.

{¶26} A review of the transcript reveals that at the time Roper entered his guilty pleas, he was proceeding with the understanding that he would be eligible for judicial release after four years. While the majority stresses that the judicial release discussion occurred after Roper was sentenced, that conversation provides a window into the parties' mindset at the time of the plea colloquy. Roper's statements on the record indicate that he believed that the trial court intentionally fashioned his sentence with the judicial release date in mind. Both the prosecutor and defense counsel were operating with that understanding as well. Under these circumstances, I would conclude that a manifest injustice occurred and I would sustain Roper's assignment of error.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.